IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kenneth Rivera, ) | Case No. 8:12-cv-00233-JMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| v. ) | |
| ) | |
| Sergeant C. Long, Sergeant Jamie Belue, ) | |
| C.O. M. Gollach, Sheila Boyd, and ) | |
| Warden Robert Stevenson, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 69.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983, generally alleging a violation of his constitutional rights when Defendants confiscated reading materials, legal mail, personal mail, and personal materials from his cell. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on January 23, 2012 against Defendants Sergeant C. Long ("Long"), Sergeant Jamie Belue ("Belue"), C.O. M. Gollach ("Gollach"), Sheila Boyd ("Boyd"), and Warden Robert Stevenson ("Stevenson") (collectively, "Defendants").[1] [Doc.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on January 23, 2012. [Doc. 1-2 at 1 (envelope stamped as received by prison mailroom on January 23, 2012).]

1.] Defendants filed a motion for summary judgment on August 16, 2012.[2] [Doc. 69.] On August 29, 2012, Plaintiff filed a response in opposition to Defendants' motion. [Doc. 85.] On September 10, 2012, Defendants filed a reply. [Doc. 94.] The motion is now ripe for review.

## BACKGROUND

Plaintiff, who was incarcerated at Broad River Correctional Institution ("Broad River") at the time of the alleged events giving rise to this action,[3] alleges that on August 11, 2011, he was asked to get dressed and was escorted to the supervisor's office because Lieutenant Parker wanted him down front. [Doc. 1 at 3.] While in the supervisor's office, Plaintiff asked why he was removed from his cell and was told Belue wanted Plaintiff out of his cell. [*Id.*] After some time had passed, Plaintiff alleges Belue and an officer came into the office with Plaintiff's belongings except for hygiene products, bed linens, and clothing. [*Id.*] When Plaintiff asked why his belongings were being taken, he was told to take it up with Long, who was with the Special Investigation Unit at Headquarters. [*Id.*] Plaintiff alleges he was escorted back to this cell and noticed that it had been destroyed. [*Id.*] Plaintiff then flooded his cell so that he could be taken back down front. [*Id.*] Plaintiff alleges he was taken down front, where Long, Belue, Gollach, Boyd, an officer, and a major were going through Plaintiff's belongings. [*Id.*] Plaintiff asked why they were going through his things, and Long stated, "Black August." [*Id.*] Then, Plaintiff was placed in a

---

[2] On July 10, 2012, Plaintiff moved to amend/correct the Complaint. [Doc. 48.] The Court denied Plaintiff's motion to amend/correct on July 31, 2012. [Doc. 54.]

[3] Plaintiff was transferred to Perry Correctional Institution ("Perry") during the pendency of this action. [*See* Doc. 98 (notice of change of address).]

small holding cell for six hours and fed a cold dinner. [*Id.* at 3–4.] He was taken back to his cell and was "stripped out" for 96 hours. [*Id.* at 4.]

Two weeks later, Plaintiff alleges Gollach and a trainee came to his cell to "show" him they were confiscating his mail. [*Id.*] Plaintiff complains that, since the incident on August 11, 2011, his mail has been tampered with, his grievances are not being processed, and the warden and grievance instructor will not answer his request to staff forms. [*Id.*] Plaintiff further complains he has not been provided the Security Threat Group ("STG") policy so that he can know what reading material is restricted under the policy.[4] [*Id.*]

Plaintiff seeks nominal damages and the return of his legal and personal mail, his books, and his business plan. [*Id.* at 5.] Plaintiff also seeks to have the Court order the institution to stop tampering with his legal and personal mail. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the

---

[4]Plaintiff alleges he has been classified as STG. [Doc. 1 at 4.]

3

pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."

*Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct

of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at Broad River [*see* Doc. 98 (notice of change of address, indicating Plaintiff is now at Perry)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief.  *Slade v. Hampton*

7

*Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from Broad River, *id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[5] in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**Claims Related to Plaintiff's Mail and Other Property**

Generally, a prisoner enjoys a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted).

---

[5] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

The Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999), held "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." However, in a footnote, the court noted "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549 n.14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). Legal mail should not be opened outside of the presence of the prisoner-addressee. *See Wolff*, 418 U.S. at 575. However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. *Lewis v. Casey*, 518 U.S. 343, 352–54 (1996). To show an actual injury, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. The prisoner must make specific allegations as to the actual injury sustained. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding the plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding the plaintiff had a "basic requirement that he show specific harm or prejudice from the allegedly denied access").

Here, Plaintiff fails to allege specific facts that would tend to show a pending non-frivolous legal case, or any other legal matter, has been adversely affected due to his mail allegedly being "tampered with." Plaintiff fails to allege how tampering with his mail has prevented Plaintiff from proceeding with his claims. Plaintiff does not allege his access to the courts has been harmed in any way or that his mail was deliberately or negligently stolen, misplaced, or missing.

9

To the extent Plaintiff alleges claims pursuant to other provisions of the Constitution, such claims likewise do not provide him any relief because his allegations fail to state a claim upon which relief may be granted. Plaintiff does not allege that any confidential correspondence with his attorney was disclosed, causing Plaintiff to be deprived of effective assistance of counsel. *Cf. United States v. Stotts*, 925 F.2d 83, 86–88 (4th Cir. 1991) (noting the contours of prison inmates' constitutional rights are imprecise, upholding the Bureau of Prisons' regulations regarding opening and reading mail, and noting that North Carolina's different approach to legal mail was not evidence that the Bureau of Prisons' method was unconstitutional). To the extent Plaintiff alleges he was deprived of his property, loss of property caused by negligence of prison officials is not a deprivation within the meaning of the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 331–34 (1986). Moreover, the Fourth Amendment is generally not applicable to searches of prison cells, and prisoners have no legitimate expectation of privacy in their possessions. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). Even liberally construing the Complaint, Plaintiff's alleged facts do not state cognizable constitutional claims.

**Claims Regarding Grievances**

To the extent Plaintiff alleges his grievances are not being processed, this bare allegation, even accepted as true, fails to state a plausible claim for a violation of any constitutional right. The law is well settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75

(4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (unpublished table decision) (noting inmate grievance procedures are not constitutionally required). Thus, even if Plaintiff's grievances have not been processed, Plaintiff has not stated a constitutional claim.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).

11

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

February 1, 2013
Greenville, South Carolina